UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| ATLANTIC SPECIALTY INSURANCE COMPANY, as subrogee of the Board of Trustees of the University of Alabama, <br><br> Plaintiff, <br><br> v. <br><br> GOODMAN DECORATING CO. INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) Case No. 7:22-cv-728-GMB ) ) ) ) ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Atlantic Specialty Insurance Company ("ASIC"), as subrogee of the Board of the University of Alabama ("the Board"), filed a complaint against Defendant Goodman Decorating Co., Inc. for breach of contract and negligence relating to damage to a Jumbotron display at Bryant-Denny Stadium caused by dryfall paint overspray. Doc. 1-1.  The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 12.  Before the court are two motions for summary judgment.  The first is ASIC's partial motion for summary judgment on its breach of contract claim. Doc. 55.  In the second motion, Goodman moves for summary judgment on both of ASIC's claims. Doc. 57.  The motions are fully briefed (Docs. 55, 57, 71, 73, 80, 82) and ripe for decision.

For the reasons explained below, Goodman's motion is due to be granted, and ASIC's motion is due to be denied.

## I. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  In responding to a properly supported motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Indeed, the nonmovant must "go beyond the pleadings" and submit admissible evidence demonstrating "specific

facts showing that there is a genuine [dispute] for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

When a district court considers a motion for summary judgment, it "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the nonmovant." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008) (citation and internal quotation marks omitted). The court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Allen v. Bd. of Pub. Ed. for Bibb County*, 495 F.3d 1306, 1315 (11th Cir. 2007) (citation omitted). Importantly, if the nonmovant "fails to adduce evidence which would be sufficient . . . to support a jury finding for [the nonmovant], summary judgment may be granted." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370 (11th Cir. 1997) (citation omitted).

The standard for deciding cross-motions for summary judgment does not

differ from the standard applied when only one party moves for summary judgment. *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The court must consider each motion separately, resolving all reasonable inferences against the party whose motion is under consideration. *Id*. "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (citation and internal quotation marks omitted).

## II.  RELEVANT FACTS[1]

From December 2019 to late August 2020, Bryant-Denny Stadium underwent a renovation process that included the installation of new Jumbotron video displays in the four corners of the stadium. The Board hired Caddell Construction as the general contractor for the renovation and Daktronics, Inc. as the contractor for the Jumbotrons. *See* Docs. 58-1 to -5. Caddell subcontracted some of its work to Goodman, including the responsibility for interior and exterior painting, wall coverings, and high-performance coating work. *See* Docs. 58-6, 58-39 at 7.

The painting of the ceiling in the sixth-floor west mezzanine fell within

---

[1] The court includes only those facts relevant to the decision. The court notes ASIC's lack of adherence to the initial order's briefing and citation requirements—particularly, the provision that "citations to the record must refer to the document number and paragraph or line number, where available [or to] document number and page number." Doc. 13 at 4–5. The absence of specific citations hinders the court's ability to efficiently evaluate arguments.

Goodman's scope of work. *See* Doc. 58-39 at 6. Goodman's employees performed this work above and adjacent to two of the Jumbotron displays. *See* Doc. 58-39 at 6, 14, 27. They painted the ceiling for the loge boxes on the extreme southern end of the west side of Bryant-Denny stadium, adjacent to the southwest Jumbotron, from April 30 to May 8, 2020. Doc. 58-39 at 14, 27. Goodman's painters used Sherwin-Williams B42 Flat Dryfall interior paint for this work. Doc. 58-39 at 8. Within ten feet of the point of discharge from a paint sprayer, dryfall paint typically dries and turns into a sweepable dust, allowing for easier overhead application and clean up. Doc. 58-39 at 8–9; *see also* Doc. 58-35 at 5.

On June 23, 2020, a Daktronics employee noticed paint on the Jumbotron display located at the southwest corner of the stadium. *See* Doc. 58-8 at 4. Multiple people observed the overspray on the southwest Jumbotron. *See* Doc. 58-37 at 19 ("[T]he overspray affecting the southwest [Jumbotron] was very apparent."); Doc. 58-41 at 27 ("To my eyes, when I saw it in November of 2020, it was plainly visible."); Doc. 58-42 at 18 (stating that he "visibly inspected the areas that were reported to me on the northwest . . . and southwest jumbotrons" and "observed paint on the displays and surrounding areas"). Daktronics notified the Board, who told Caddell, and Caddell contacted Goodman. Doc. 58-8 at 2–4. Goodman told Caddell that the paint could be cleaned with soap and water, alcohol, or by pressure washing, but the Board told Caddell not to attempt to clean the overspray based on its

5

communications with Daktronics. Doc. 58-8 at 1.

Following discussions among representatives of Daktronics, Caddell, the Board, and Goodman (*see* Docs. 55-10 to -11, 55-14), and the discovery of overspray on the northwest Jumbotron (*see* Doc. 58-37 at 19), the Board notified its insurance carrier of a potential claim on August 10, 2020. Doc. 55-15.  After multiple rounds of inspections and attempted cleaning (*see* Docs. 55-17 to -19, 58-18, 58-37 at 13–14), Daktronics wrote the Board on September 15, 2020, to set out five "options to resolve the overspray on LED displays." Docs. 55-22 & 58-14.  These options included: (1) to leave the displays in their current state; (2) to replace the louvers on the impacted modules; (3) to replace the approximately 630 impacted modules; (4) to replace all modules on both Jumbotrons; and (5) to replace all modules on the southwest Jumbotron, swap the impacted modules in the northwest Jumbotron with unaffected modules from the southwest Jumbotron, and hold the remaining unaffected modules as spares. Docs. 55-22, 58-14.  On October 21, the Board selected the fifth option at a cost of $555,450.[2] Doc. 58-22 at 1.

As the relationship between Goodman, ASIC, and the Board began to deteriorate, numerous disputes arose over the examination, inspection, and potential

---

[2] The Partial Proof of Loss and Subrogation Agreement, executed by the Board, gives a property damage amount of $555,450 with a $25,000 deductible, for a final claim amount of $530,450. Doc. 55-34.  Because the Board elected to swap the unaffected modules, the claims in this lawsuit do not relate to any alleged damage to the northwest Jumbotron display.

cleaning of the modules such that outside counsel became involved in early 2021. *See, e.g.*, Docs. 55-26–29, 55-36–38, 72-6, 72-18. On May 27, 2022, ASIC, as subrogee of the Board, filed a complaint against Goodman for breach of contract and negligence in the Circuit Court of Tuscaloosa County, Alabama.[3] Doc. 1-2 at 2–66. Goodman removed the complaint to this court on June 10, 2022. Doc. 1.

### III. DISCUSSION

The parties agree that in Alabama the statute of limitations for damage to real or personal property arising out of a defect, damage, or deficiency in the construction of an improvement to real property by a licensed contractor is two years. Ala. Code §§ 6-5-220(a) & 6-5-221(a). Specifically, § 6-5-221(a) provides, in pertinent part:

> All civil actions in tort, contract, or otherwise . . . against builders who constructed, or performed or managed the construction of, an improvement on or to real property designed by and constructed under the supervision, administration, or observation of an architect or engineer, or designed by and constructed in accordance with the plans and specifications prepared by an architect or engineer, for the recovery of damages for:
> . . .
> (ii) Damage to real or personal property caused by any such defect or deficiency; . . . shall be commenced within two years next after a cause of action accrues or arises, and not thereafter.

Goodman argues that it "painted the loge boxes next to the Southwest Display from

---

[3] ASIC filed a substantially similar complaint in the Northern District of Alabama on May 3, 2022. *See Atl. Specialty Ins. Co. v. Goodman Painting, Inc.*, Case No. 7:22-cv-562-ACA, Doc. 1. ASIC voluntarily dismissed the case on May 24, 2022. *Atl. Specialty Ins. Co. v. Goodman Painting, Inc.*, Case No. 7:22-cv-562-ACA, Doc. 10. For reasons explained below, ASIC's claims may have been timely if it had not elected to dismiss this suit.

7

April 30 to May 8, 2020," so "any dryfall dots that drifted to the Southwest Jumbotron occurred no later than May 8, 2020." Doc. 57 at 21.  Because ASIC did not file the complaint until May 27, 2022 (Doc. 1-2 at 2–66), Goodman claims that the two-year statute of limitations precludes all claims in the complaint. Doc. 57 at 21.

ASIC agrees that § 6-5-221(a) supplies the statute of limitations for both its breach of contract and negligence claims but makes two arguments against summary judgment.  First, it contends there is a question of fact about the timing of the overspray. Doc. 73 at 10–12.  Second, it argues that the claims did not accrue until after the discovery of the overspray.  Neither argument is persuasive.

The evidence before the court establishes that Goodman's employees painted the area closest to the southwest Jumbotron from late April through early May—but not later than May 8, 2022.  Specifically, Adam Diamond, the project manager for Goodman, testified that the portion of the ceiling adjacent to the southwest Jumbotron was "painted late April 2020.  I believe we started it, it was like April 28th or 30th, and was complete, I believe by the first week of May or so. . . . [I]f there was any residual dust from our dryfall that landed on the modules, that would have occurred between April 30th [and the] first week of May." Doc. 58-39 at 14.  Later in his deposition, Diamond confirmed that "the southerly portion [of the relevant area] was painted between 4/30 and 5/8" based on the daily log sheets and

his contemporaneous correspondence with Caddell. Doc. 58-39 at 27. That correspondence,[4] including photographs, supports Diamond's testimony that the painting of the southern end of the west side of the stadium occurred in late April and early May. Doc. 80-1 at 3–18.

ASIC counters that "(1) where the painters were painting may not be determinative of when the overspray event happened and (2) that the date of the overspray was unknown." Doc. 73 at 10–11. In support, ASIC points to testimony from Mike Key, the project foreman for Goodman. But his testimony does not create a genuine question of material fact. During his deposition, Key admitted that humidity "can" cause dryfall paint to dry more slowly (Doc. 74-5 at 12–13) and that wind carrying dryfall dust farther than ten feet "can be a possibility." Doc. 74-5 at 13. This type of speculation based on hypothetical facts has no bearing on summary judgment. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931–32 (7th Cir. 1995) ("'Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.'"). This is especially true when

---

[4] Goodman submitted this evidence with its reply in support of summary judgment. ASIC did not move to strike the additional evidence or to file a surreply. *See United States v. Carter*, 506 F. App'x 853, 860 (11th Cir. 2013) ("[H]ad Carter wished to respond to the government's reply, she could have sought . . . leave to do so, but, as she did not, the [court] was free to rely on the evidence the government attached to its reply."); *Lightsey v. Potter*, 268 F. App'x 849, 852 (11th Cir. 2008) (holding that the district court did not err in considering a declaration attached to a reply brief because the objecting party did not seek to file a surreply or a supplemental appendix).

ASIC has not introduced any evidence that the weather in Tuscaloosa on the relevant days was humid or windy, and when Key testified elsewhere that Goodman would not have painted if it had been rainy or windy. *See* Doc. 74-5 at 38.

In addition, Key's testimony that the painters worked on the ceilings in Section A on May 28, 2020 (Doc. 74-5 at 23, 38) is not specific enough to call into question Diamond's testimony. Section A spans more than 205 feet. Doc. 80-1 at 4. Key did not identify the portion of Section A in which the painters worked on May 28. Diamond, on the other hand, explained that "Goodman began painting the extreme south end of the west side immediately adjacent to the Southwest Jumbotron in Section A1/A2 working our way to Section C on the north end of the west side." Doc. 80-1 at 4. This testimony conforms with Key's explanation of how the painters progressed through Sections A, B, and C. *See* Doc. 74-5 at 31, 37–38. Key also admitted to a complete inability to fix the timing of the overspray on the southwest Jumbotron. *See* Doc. 74-5 at 40 (responding to a question about the date of the overspray, "Well, I ain't seen no spray get on it, so I don't know what day").

Accordingly, the court finds that ASIC has not created a question of fact as to the timing of the overspray that affected the southwest Jumbotron. Because the evidence establishes that the painting occurred no later than May 8, 2020, ASIC filed its complaint outside of the two-year statute of limitations unless its claims did not accrue until the discovery of the damage.

ASIC therefore argues that the overspray "fits within the definition of latent defect or latent damage" such that its claims did not accrue until discovery. Doc. 73 at 12.  Under Alabama Code § 6-5-220(e), a cause of action accrues

> when property is damaged as a proximate result of a defect or deficiency . . . in the construction of an improvement on or to real estate, constructed, performed, or managed by a builder; or where the damage or injury either is latent or by its nature is not discoverable in the exercise of reasonable diligence at the time of its occurrence, the claim for relief shall be deemed to arise or accrue at the time the damage or injury is or in the exercise of reasonable diligence should have been first discovered, whichever is earlier.  The cause of action accrues or arises whether or not the full amount of damages is apparent at the time of the first injury or damage, and cannot be extended as a continuous wrong.

The statute does not define the term "latent."  In other contexts, Alabama courts have looked to the definition from Black's Law Dictionary: "A latent defect is defined as '[a] hidden or concealed defect,' '[o]ne which could not be discovered by reasonable and customary inspection.'" *Collier v. Duprel*, 480 So. 2d 1196, 1199 (Ala. 1985) (quoting Black's Law Dictionary (5th ed. 1979)); *see also Casey v. Estes*, 657 So. 2d 845, 848 (Ala. 1995) (quoting same).

While the precise date of the overspray may not be known, it is undisputed that the discovery of the overspray on the southwest Jumbotron occurred on June 23, 2020. Doc. 58-8 at 4.  ASIC argues that the time lapsed from painting to discovery "means well over a month passed without detection despite the almost constant presence of people, including painters, foremen, superintendents, and the like."

11

Doc. 73 at 12. ASIC also points to Goodman's characterization of the "'invisible' nature of the overspray, which is indicative of the latent quality of the damage." Doc. 73 at 12–13.

The fact that a large number of people worked on the renovation in May and June 2020 does not prove that the damage was latent—only that these people either did not see the damage or did not report it. Regardless, the evidence before the court establishes that the overspray was visible to anyone who looked at the affected area of the southwest Jumbotron. *See* Doc. 58-37 at 19 (observing that "the overspray affecting the southwest [Jumbotron] was very apparent"); Doc. 58-42 at 18 (stating that after he was made aware of the damage, he "visibly inspected the areas that were reported to me on the northwest . . . and southwest jumbotrons" and "observed paint on the displays and surrounding areas"); Doc. 58-41 at 27 ("To my eyes, when I saw it in November of 2020, it was plainly visible.").[5] While there is no explanation in the record for why no one noticed or reported the overspray until June 23, the evidence does not prove that the damages was hidden, concealed, or unable to be discovered by reasonable and customary inspection.

This finding contrasts with the one made by the Alabama Court of Civil

---

[5] The court notes that a Daktronics employee stated in an email that the paint on the modules was "indistinguishable from dust if standing more than 2 ft. away" (Doc. 58-9 at 1) and explained in his deposition that "[t]he overspray particles were very fine . . . so at a distance it was difficult to . . . distinguish the overspray from the dust and pollen." Doc. 58-37 at 10–11. This explanation reinforces the court's finding that the overspray was not hidden and could have been discovered with a reasonable inspection.

Appeals ("ACCA") in *Bella Investments, Incorporated v. Multi Family Services, Incorporated*, 97 So. 3d 787 (Ala. Civ. App. 2012). In that case, the trial court entered summary judgment on statute of limitations grounds for claims related to defects in a hotel's siding. *Id*. at 795. The trial court found that the defective siding was not hidden or concealed because it was "visible to anyone who may walk by the building" and the plaintiff did not present any evidence showing "that the defect could not have been discovered by a reasonable and customary inspection." *Id*. The ACCA reversed the trial court and found there was a genuine issue of material fact as to whether the alleged defect was latent. *Id*. at 796. The ACCA specifically relied on evidence that a building inspector did not observe any deficiencies in the siding when he issued the certificate of occupancy. *Id.*

Here, ASIC has not presented any similar evidence creating a question of fact about the latent nature of the overspray. There is no evidence that the contractors or anyone else at Bryant-Denny Stadium could not readily observe the overspray if they had looked at the affected Jumbotrons. And unlike the siding in *Bella Investments*, there is no evidence of an inspection conducted after the painting that failed to turn up any evidence of damage. Instead, ASIC offers only that no one saw it until June 23, 2020. This is not enough to prove that the defect was latent, and it is not enough to survive summary judgment.

For these reasons, the court finds that Alabama's two-year statute of

limitations precludes ASIC's claims for breach of contract and negligence. Summary judgment is due to be granted in Goodman's favor.

## IV. CONCLUSION

Accordingly, it is ORDERED that ASIC's Motion for Partial Summary Judgment (Doc. 55) is DENIED, and Goodman's Motion for Summary Judgment (Doc. 57) is GRANTED. The court will enter a separate final order.

DONE and ORDERED on May 15, 2024.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE